IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>BOLDT COMPANY,<br><br>        Defendant. | 8:09CV294<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the Boldt Company's ("Boldt") motion for summary judgment and to compel arbitration pursuant to the Nebraska Arbitration Act, Neb. Rev. Stat. § 25-2603(a), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Filing No. 12. Archer Daniels Midland Company filed suit against Boldt in Nebraska state court requesting a stay of arbitration and a ruling on Boldt's claims. Filing No. 1, Ex. 2. On April 27, 2009, Boldt removed this case to the Federal District Court for the District of Nebraska. Filing No. 1, Ex. 1. The court has carefully reviewed the record, briefs, and relevant case law. The court concludes that the motion to compel arbitration should be granted.

**FACTS**

Archer Daniels Midland Company ("ADM") is an agricultural processing company headquartered in Illinois that does business in Nebraska. Boldt is a construction and contracting company headquartered in Wisconsin that does business in Nebraska.

On July 18, 2009, ADM and Boldt entered into a construction contract ("Contractor's Agreement"). As per the Contractor's Agreement, Boldt agreed to construct and install a portion of a coal-fired co-generation plant at ADM's facility in Platte County, Nebraska. The

Contractor's Agreement contained an arbitration provision which declared that the parties must submit claims to the Management Oversight Committee, a body comprised of Jim Lee of Boldt and John Thalhauser of ADM. The provision stated that if the committee denied the claim, or failed to rule on it, the claiming party could demand arbitration.

Article XXX of the Contractor's Agreement contains the express terms of the arbitration provision. Article XXX of the Contractor's Agreement reads:

> Any claims arising out of or related to the Contract, shall, after initial decision by the Management Oversight Committee or 30 days after submission of the Claim to the Management Oversight Committee, be subject to arbitration. Arbitration shall be conducted in Columbus, Nebraska, in accordance with rules and procedures of the American Arbitration Association for arbitration of commercial disputes.

Article XXX of the Contractor's Agreement, Filing No. 11, Ex. 1. The Contractor's Agreement also contains provisions for dealing with conflicting provisions in subsequent agreements. Article XV of the Contractor's Agreement reads:

> Where possible, this Agreement is to be construed in harmony with any and all other contracts between the parties, but to the extent that any provision of this Agreement conflicts with any other agreement, the terms of this Agreement shall control.

Article XV of the Contractor's Agreement, Filing No. 11, Ex. 1. The Contractor's Agreement further designated that arbitration claims were subject to the rules of the American Arbitration Association ("AAA"), that the AAA would be the designated arbitrator for disputed claims, and that Nebraska law would control the terms of the contract.

Both parties agreed to and signed the Contractor's Agreement and Boldt began construction on the coal-fired co-generation plant. During construction, Boldt experienced time delays and increased cost. ADM disputed these claims. As a result of the dispute, ADM and Boldt entered in to the "Addendum to Purchase Orders 384110, 492963, 452801,

and Contractor's Agreement" ("Addendum") in December of 2008.  No. 11, Ex. 3. The Addendum released some of the disputes, disagreements, and claims arising out of the Contractor's Agreement and various purchase orders and set a new final contract price and a new date for substantial completion.

ADM asserts that the Addendum contains provisions that supersede the arbitration provisions of the Contractor's Agreement.  The relevant provisions of the Addendum are found in paragraphs 9 and 13 of the Addendum.  Paragraphs 9 and 13 of the Addendum state that any new additional claims after execution of the Addendum must be related to direct costs incurred by Boldt and be related to:

> Weather delays, extras, change orders, productivity impacts, general conditions, site conditions, material delays conflict with and/or interference from other contractors or material men, and other claims Boldt may have for extra time or extra money for completion of the Work. . . .

Paragraph 9 of Addendum to Purchase Orders 384110, 492963, 452801, and Contractor's Agreement, Filing No. 11, Ex. 3.

The new dispute resolution provisions, outlined in paragraphs 9 and 13 of the Addendum, state that if Boldt has a new claim for a cost of more than $3,000 and/or extra time of two consecutive days, Boldt was required to submit the claim to Kelly Glassen at ADM.  If Kelly Glassen or his designee rejected the claim, Boldt had ten days to submit the claim to Jim Lee of Boldt and John Thalhauser of ADM (referred to in the Contractor's Agreement as the Management Oversight Committee).  If John Thalhauser denied the claim, Boldt could demand arbitration and submit it to a mutually agreeable arbitrator for binding determination.  If Boldt failed to submit the claim in the manner outlined in paragraphs 9 and 13 of the Addendum, the claims would be deemed waived.  *Id*. at ¶ 13.

ADM asserts that the procedures set forth in paragraphs 9 and 13 of the Addendum are conditions precedent to arbitration.

On February 16, 2009, Boldt submitted two claims to John Thalhauser. Boldt asserts Kelly Glassen denied the first of the two claims on January 23, 2009. This claim asked for more time to complete the coal conveyor aspect of the project pursuant to paragraph 13 of the Addendum. Kelly Glassen denied the second of the two claims of Boldt on January 22, 2009. This claim asked for more money for seam welding on the boiler aspect of the project and was made pursuant to paragraph 9 of the Addendum. ADM disputes the validity of these claims.

On May 11, 2009, Boldt calculated the impact of the aforementioned claims and submitted to ADM a written request for additional compensation of $5,200,000. Boldt sent this request to John Thalhauser and asked for a meeting to discuss the merits. On May 19, 2009, Frederic Kenney, ADM's corporate counsel, denied the claim. No one at ADM referred the letter to Kelly Glassen, and John Thalhauser did not meet with Jim Lee regarding the claim. ADM asserts that this claim is waived because it was not sent to John Thalhauser within ten days of its denial.

On June 18, 2009, Boldt filed a demand for arbitration with the AAA for $5,200,000 for extra time to complete the coal conveyor aspect of the project and extra funds for seam welding on the boiler aspect of the project. ADM asserts that this demand is improper because all claims prior to the Addendum were released by the Addendum, Boldt did not comply with the procedure set forth in the Addendum, and ADM did not agree to AAA in the Addendum . Therefore, the AAA would not be a "mutually agreeable" arbitrator. On July 7, 2009, ADM filed with the AAA an objection to the AAA's jurisdiction in the matter.

On July 18, 2009, ADM filed an action in the District Court of Platte County, Nebraska, requesting a stay of the arbitration and declaratory judgment that the claim is not valid. ADM claimed that Boldt failed to meet the conditions precedent to arbitration as outlined by the Addendum.

On September 4, 2009, Boldt requested that Kelly Glassen issue a written decision on the May 11, 2009 claim by September 11, 2009. Boldt informed ADM that it would consider the claim denied if they received no response from Kelly Glassen by September 11, 2009, and asked that the matter be referred to John Thalhauser and Jim Lee the week of September 14, 2009. ADM asserts that this claim is months too late for compliance with the terms of the Addendum.

Since its filing in the District Court of Platte County, Nebraska, this matter has been removed to the Federal District Court for the District of Nebraska. ADM seeks to have the demand for arbitration stayed and have the matter tried before the district court, claiming that the parties did not agree to AAA as a mutually agreeable arbitrator in the Addendum and that Boldt's claims were released by the Addendum. Boldt seeks summary judgment and asks that this court compel arbitration pursuant to the Nebraska Arbitration Act, Neb. Rev. Stat. § 25-2603(a), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

## DISCUSSION

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Id.* at 324.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id*. at 249-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 250-51.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary

judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

The Federal Arbitration Act ("FAA") makes written arbitration provisions valid, enforceable, and irrevocable, except upon grounds that exist as law or in equity for the revocation of any contract. 9 U.S.C. § 2. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute to which he has not agreed to so submit. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *Steelworkers v Warrior & Gulf Nac. Co.,* 363 US 574, 582 (1960)). Once parties have agreed to a contract containing an arbitration provision, courts have "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)). Courts resolve doubts regarding the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25; *Suburban Leisure Ctr., Inc. v. AMF Bowling Prods.,* 468 F.3d 523, 526 (8th Cir. 2006).

When deciding whether to compel arbitration, this court applies a two-part test. First, the court determines if a valid agreement to arbitrate exists. If such an agreement exists, "[t]he only question is whether it covers the dispute." *United Steelworkers v. Duluth Clinic, Ltd.,* 413 F.3d 786, 788 (8th Cir. 2005). To make such a determination, the court first considers whether the arbitration clause is narrow or broad. If the clause is broad, the court determines whether the dispute relates to the subject matter of the agreement. *Id.*

7

at 789. Where an agreement exists between the parties, and the agreement contains a broad arbitration clause, there is a presumption of arbitrability. *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 209 (1991).

In general, the FAA has preemptive effect over state law that tends to preclude parties from submitting matters to arbitration. *Perry v. Thomas,* 482 U.S. 483 (1987); *Moses H. Cone.*, 460 U.S. 1; *Dowd v. First Omaha Securities Corp.*, 495 N.W.2d 36 (Neb. 1993). Nebraska law favors arbitration agreements and states: "A written agreement to submit any existing controversy to arbitration is valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract." Neb. Rev. Stat. § 25-2602.01(a). The statute further states that such an agreement is valid unless there are grounds in law or equity for the revocation of the contract, assuming it is entered into voluntarily and willingly. Neb. Rev. Stat. § 25-2602.01(b).

In the instant case there is a valid arbitration agreement entered into by ADM and Boldt. Article XXX of the Contractor's Agreement says that any claims arising out of the contract shall be subject to arbitration. Paragraphs 9 and 13 of the Addendum are also valid arbitration agreements and set forth the procedure through which such arbitration may be initiated. While the procedure through which a party may seek relief by arbitration differs from the Contractor's Agreement and the Addendum, both documents contain an arbitration clause. So, in this case, there is not just one valid arbitration agreement, but two.

Article XV of the Contractor's Agreement says that all provisions of the Contractor's Agreement are to be construed in harmony with the provisions of any other agreement entered in to by ADM and Boldt. Article XV also states that should there be a conflict

8

between the Contractor's Agreement and any later agreement entered in to by ADM and Boldt, the terms of the Contractor's Agreement shall control.  Therefore, when in conflict with the Addendum, the terms of the Contractor's Agreement control in this case.

Furthermore, the arbitration provisions are broad in both the Contractor's Agreement and the Addendum.  The terms of the Contractor's Agreement state that "any claim arising out of or related to the Contract" are subject to arbitration.  Article XXX of the Contractor's Agreement, Filing No. 11, Exhibit 1.  The terms of the Addendum also state that any claims not released by the Addendum and arising after ADM and Boldt entered into the Addendum are subject to arbitration.  The filing requirements with various employees of the two companies may make the procedure by which arbitration is initiated rather narrow, but the scope of issues that are subject to arbitration remains broad.  As stated before, when an agreement contains a broad arbitration clause, there is a presumption in favor of arbitrability.  *Duluth Clinic, Ltd.,* 413 F.3d at 788.

Nebraska law would also favor arbitration in this matter.  The arbitration agreements in both the Contractor's Agreement and the Addendum were entered into voluntarily and willingly and create no grounds for revocation in law or equity.  Under the Nebraska arbitration statutes, the arbitration agreements in the two controlling documents are valid and enforceable.

Since there is a valid arbitration agreement in effect and Boldt's claims are subject to that agreement, this court compels both parties to engage in arbitration to resolve the disputes.  ADM disagrees with the selection of AAA as a potential arbitrator claiming that they are not "mutually agreeable," as per the terms of the Addendum.  As such, the parties are required come to a mutual agreement as to a suitable arbitrator for this matter.  Should

the parties be unable to come to such an agreement, the AAA will be the designated arbitrator for Boldt's claim. The court finds both contracts clearly set forth a plan for arbitration and further finds that the subjects of dispute in this case are a matter for arbitration.

THEREFORE, IT IS ORDERED that defendant's motion to compel arbitration, Filing No. 12. is granted. The parties are ordered to submit their disputes to arbitration as outlined in this Memorandum and Order. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 26th day of March, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.